**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin A Osborn, | No. CV-20-02344-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Arizona law, as interpreted by the Arizona Court of Appeals in 2001, renders certain individuals serving the first of two consecutive sentences ineligible for "earned release credits." In 2010, Petitioner challenged that interpretation, but the Arizona Court of Appeals concluded he was not entitled to relief. In 2020, Petitioner filed this federal petition for writ of habeas corpus. Magistrate Judge John Z. Boyle issued a Report and Recommendation (Doc. 16) recommending the petition be denied as untimely. Petitioner filed objections but the R&R is correct and will be adopted in full.

## BACKGROUND

On December 7, 1991, Petitioner killed two individuals. Petitioner was not immediately prosecuted but, eventually, he was convicted of two counts of manslaughter. On August 22, 1997, Petitioner was sentenced to two 15-year terms of imprisonment, to be served consecutively. In 2010, Petitioner filed a petition for post-conviction relief in state court. As relevant here, that petition alleged Petitioner was not being credited with the

"earned release credits" he believed he was entitled to receive.[1] Understanding Petitioner's argument, and why it was foreclosed by Arizona law, requires a brief overview of Arizona's laws regarding sentence computation.

At the time Petitioner committed his crimes, Arizona law allowed for a prisoner to accrue "earned release credits" at a set rate, such as "one day of credit for every three days" served in prison. *Crumrine v. Stewart*, 24 P.3d 1281, 1282 (Ariz. Ct. App. 2001). Somewhat simplified, an individual serving a single sentence was entitled to a straightforward calculation such that, based on "earned release credits," he was eligible for release long before the expiration of his full sentence. The situation is very different, however, for individuals who committed multiple crimes and were sentenced to consecutive sentences.

Based on several statutory changes Arizona made between 1986 and 1993, a strange rule applies to prisoners serving consecutive sentences for crimes committed between 1986 and 1993. In 2001, the Arizona Court of Appeals issued a decision discussing the rule in detail. *Id.* In that case, a prisoner committed crimes in 1989 and was subsequently sentenced to a prison term for kidnapping and a consecutive prison term for armed robbery. *Id.* While serving his kidnapping term, the prisoner filed suit claiming he was entitled to have "earned release credits" applied "to his kidnapping sentence so that he could begin serving his armed robbery sentence." *Id.* at 1284. The Arizona Court of Appeals disagreed and held, based on the wording of the relevant statutes, the prisoner could not use "earned release credits" to shorten his kidnapping sentence. Moreover, the prisoner could not apply the "earned release credits that he earned while serving his kidnapping sentence" to his armed robbery sentence. *Id.* at 1284. In effect, the prisoner was not "entitled to deduction of release credits" until he was serving the armed robbery sentence, *i.e.* the sentence that would end with his "outright release from confinement." *Id.* at 1283. And even then, he was only entitled to the "earned release credits" earned while serving the armed robbery sentence.

---

[1] The state court converted the petition for post-conviction relief into a special action proceeding. For simplicity, the Court will refer simply to the "petition."

Based on this interpretation of Arizona law, Petitioner's argument in 2010 that he was not receiving the correct "earned release credits" while serving the first of his two manslaughter sentences was not viable. After losing at the trial court, Petitioner sought review by the Arizona Court of Appeals. That court rejected Petitioner's argument, explaining that as of 2010 Petitioner was "serving the first of two consecutive sentences." (Doc. 13-1 at 178). As the Arizona Court of Appeals explained, *Crumrine* means a prisoner is not entitled "to apply earned release credits to the first of two consecutive sentences." Therefore, Petitioner was not entitled to "earned release credits" regarding his first manslaughter sentence. (Doc. 13-1 at 179).

The Arizona Court of Appeals issued its decision in December 2011 and the mandate was issued on January 26, 2012. There is no indication Petitioner sought review by the Arizona Supreme Court. Nor did Petitioner file a federal petition around that time. Instead, Petitioner appears to have waited approximately eight years to take further action. In November 2020, Petitioner submitted a prison grievance asking for the "earned release credits" from his first sentence be applied to his second sentence. That grievance was rejected under the reasoning outlined in *Crumrine*. On December 7, 2020, Petitioner filed his federal petition for writ of habeas corpus.

After full briefing, Magistrate Judge Boyle issued a R&R concluding Petitioner's claims were "untimely and he is not entitled to equitable tolling." (Doc. 16 at 1). Petitioner then filed objections claiming he had been subjected to "extreme measures . . . to prevent Petitioner from pursuing his rights." (Doc. 17 at 3). Petitioner referenced a list of "extreme measures" he had provided in an earlier document. According to that list, the Arizona Department of Corrections "put an end to [his] ability to litigate in the 2012-2013 time frame." (Doc. 14 at 11). Petitioner states, from 2008 through 2013, he was subjected to "sub-freezing temperatures," was unable to access "the legal library," was housed "in cells without electricity" and "flooded with sewage," was served food "that had been poisoned with a powerful commercial poison," and prison officials repeatedly read "false paperwork" over the prison loudspeakers "which claimed that Petitioner was an FBI agent

or informant." (Doc. 14 at 11-12). Those actions eventually led "Petitioner to stop all litigation." Petitioner describes the "impediments" to his litigation as ongoing. (Doc. 14 at 13). Petitioner does not explain what changed such that he was able to file the present petition in December 2020.

### ANALYSIS

In responding to the federal petition, Respondents argued the one-year statute of limitations began to run, "at the latest," when the Arizona Court of Appeals issued its mandate in January 2012. (Doc. 13 at 7). The R&R accepted that as the relevant starting date and concluded Petitioner had until 2013 to file his federal petition. Petitioner appears to disagree with the statute of limitations beginning in 2012 although he does not clearly identify an alternative starting date. Instead, Petitioner presents three overlapping arguments regarding timeliness. First, Petitioner argues Respondents imposed "impediments" which prevented him from filing suit before 2020. *See* 28 U.S.C. § 2244(d(1)(B) (noting one-year limitations period begins once "impediments" to filing are removed). Second, Petitioner argues he is entitled to equitable tolling. And third, Petitioner claims application of the statute of limitations would result in a "fundamental miscarriage of justice." Based on the present record, none of these arguments are convincing.

Pursuant to 28 U.S.C. § 2244(d)(1)(B), the one-year limitations period does not begin to run until "the date on which the impediment to filing an application created by State action . . . is removed, if the applicant was prevented from filing by such State action." Petitioner argues the "extreme measures" imposed on him by state officials prevented him from filing his federal petition earlier. As recounted earlier, state officials allegedly "put an end to [Petitioner's] ability to litigate in the 2012-2013 time frame." To do so, state officials "tortured" Petitioner from "2008 to, Petitioner believes, approximately 2013." (Doc. 14 at 11). Petitioner does not, however, identify the particular impediments that prevented him from pursuing his federal petition for the seven years *after* 2013. In addition, Petitioner "has not demonstrated a causal connection between" the unidentified

impediments "and the untimeliness of his habeas petition." *Bryant v. Arizona Atty. Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007). Most importantly, Petitioner has not identified how conditions changed in 2020 such that he was able to file the present petition. Accordingly, even assuming Petitioner suffered some state-created impediments for some time periods after 2012, he has not established the impediments were sufficient to render the current petition timely.

Next, Petitioner argues he is entitled to equitable tolling. To be entitled to equitable tolling, Petitioner would need to show "he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020). Petitioner has not established he acted diligently from 2012 through 2020. Therefore, he is not entitled to equitable tolling.

Finally, Petitioner argues he is entitled to the narrow exception to the statute of limitations established in *McQuiggin v. Perkins*, 569 U.S. 383 (2013). That case held the one-year statute of limitations will not bar a federal petition presenting "a convincing claim of actual innocence." *Id.* at 395. Petitioner has not presented such a claim.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 16) is **ADOPTED IN FULL**. The petition for writ of habeas corpus (Doc. 6) is **DISMISSED WITH PREJUDICE**.

…

…

…

…

…

…

…

…

1    **IT IS FURTHER ORDERED** a Certificate of Appealability and leave to proceed
2  in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified
3  by a plain procedural bar and reasonable jurists would not find the ruling debatable, and
4  because Petitioner has not made a substantial showing of the denial of a constitutional right.
5    Dated this 19th day of August, 2021.

                                                Honorable Roslyn O. Silver
                                                Senior United States District Judge